May it please the Court, the Appellant is before this Court raising three arguments, all of which are issues of first impression for this Circuit. The first issue that we are raising is that the United States sentencing guidelines, even after Booker, are still mandatory, basing that on a substantive analysis of Justice Breyer's remedial opinion and breaking it into statutory language, all of the factors that are set forth in 3553A really point back to the United States sentencing guidelines. This belief that the guidelines are still mandatory and the Sixth Amendment protections are still triggered. Then we have to ignore most of Judge Breyer's opinion, don't we, or at least the part of it that saves the constitutionality of the... I would concur that it is probably a brave moment for this Court to do that. Well, it's hard for us to overrule a majority of the Supreme Court. I think what you're pointing to is that there is a tension between the notion that this is going back to the days before the guidelines and the Williams opinion, and yet there is a standard of reasonableness nonetheless, which seems to be a substantive standard. That tension just seems to be in the opinion. Is there any way you think of that we could handle it that is not contrary to the opinion, that makes some logical sense out of it all? Yes, Your Honor. What I would state, that is, prior to coming into the Court over the weekend, I checked the circuit's website, and I noted an opinion from January 13, 2006, the U.S. v. Cantrell opinion, which is cited for publication. In that opinion, this Court or this circuit is adopting a two-step analysis in understanding or applying Booker and these constitutional and the remedial opinions. And in doing so, the Court is stating, first and foremost, that this Court needs to review a district court's application of the guidelines to the particular case. In looking at the substantive opinion and understanding that, it is our position to this Court that in doing that analysis, the constitutional protections remain. So when the Court does its first step of the analysis in understanding which guideline range applies to a particular case, the Court, because of the constitutional protections, is limited to the jury's findings and the defendant's submissions. Then, and only after that point, in a separate analysis, looking at the reasonableness or doing a reasonableness analysis. Well, that's an interesting approach, but it's pretty close to what the judge did here, isn't it? Isn't it pretty close to what the judge actually did in your case? I would disagree with the Court on that issue because there were considerations of loss, role in the offense, obstruction of justice, sophistication that were not found by the jury, nor were admitted by the defendant. But what he did was, it seems exactly what Cantrell prescribes, although it was before Cantrell, he first figured out the guidelines using all that. But then when he explained his sentence, he didn't even, he said, okay, this is the advisory guideline range, I now know what it is. And then he went on and explained his sentence almost without regard to that. The concern that I see in that analysis is that we And he sentenced to considerably less than the guidelines. See, that's where I see the problem here is the foundation. Where do we start before we do the analysis? Because if we start at 210 months, 180 months looks very reasonable. But if we start at 16 months, which the constitutional protections allow for, then to go to an 180 month sentence, nearly 11 or 12 times what the guidelines would propose per the constitutional protections, then the reasonable analysis is completely, it's a completely different dynamic. Because how does a court justify in this case a sentence that's 11 or 12 times the sentence that the guidelines with the constitutional protections? So if the court is looking That's not quite right. I thought that you or your predecessor actually recognized that it was about 48 months or something when you put things that he admitted to into it. I think the only findings that the jury made in this case were the base offense level and the finding of more than 10 victims. And in light of that, there were no other findings by the court as to, I mean, by the court's findings, assuming that the court is finding that even a 48-month sentence that was imposed was four times, nearly four times that. But there's no justification other than a statement that in fact, well, we need to send a message. Well, send a message, Your Honor. I think it reverses the due process and individual treatment and equal protection that a defendant like Mr. Hudson deserves in a case like this. To send a message that says we're going to look at what others, regardless of what this particular defendant did, we need to send a message to what others need to hear. Well, that message really ignores the individual treatment of the defendant in a particular sentencing and focuses on what volume we need to send this message out to others. It slips away from the individualized equal protection. Isn't deterrence one of the 3553 considerations? Deterrence? Yes. But I think that 3553 does consider deterrence, but the guidelines also considered deterrence in both its substantive and its policy statements. So in light of that, it seems to be duplicative. That's why I keep coming back in the analysis that what we're really dealing with here is the guidelines. It seems like that Justice Breyer wants to salvage the guidelines in a remedial opinion. And maybe when we look at the tension, as the court noted, between the two opinions, maybe the way to salvage the guidelines and the reasonableness analysis is to say there's constitutional issues that cannot be sidestepped that are important, especially in a case when someone exercises their right to a jury trial. I didn't quite understand your response to Judge Breyer on deterrence. Once you say deterrence is an appropriate sentencing objective, it means you are using the prisoner at bar as an object lesson for a lot of other people. And there does not seem to be any constitutional objection to that. Deterrence in terms of the individual, deterrence in terms of other people in society. I think that's where I would differentiate the analysis. You don't think that sentencing can look to the potential criminals among us and say we're going to make an example of this person? Make an example of the person certainly, but within the individual characteristics of what they've done, not to go over and above that to say that there's a society of concern toward deterrence that's greater than the individual. But that isn't the statute. The need for the sentence imposed to afford adequate deterrence to criminal conduct. But then you're saying it's just for the individual's conduct, not for society. It still has to be considered, I think, looking at the individual. If we're subordinating the individual's deterrence to make a statement here. So you're saying it's a specific deterrence, but not general deterrence? Yes. Do you have any case law authority for that? If the Court will allow me, I will submit further briefing, and I will check accordingly if the Court will allow me. You have a minute and a half left if you want to reserve any time. I'd like to reserve my time. Thank you, Your Honor. May it please the Court, I'm Assistant United States Attorney Curtis Kahn, and I represent the Plaintiff Appellee here at the United States of America. I have a question. And this is sort of out of left field in the sense we didn't ask in advance, so if you don't want to answer it, it's fine. But does the government have a position on whether we now have jurisdiction to review a within-guideline sentence, although we didn't before? I appreciate, actually, the Court's question, because I didn't want to come out of left field with that. I do understand that in our opening brief, we did essentially concede jurisdiction under 3742A. I think the government has done a reversal on that position, questioning whether, in fact, that there would be jurisdiction for courts to review guideline sentences as reasonable. I believe this is something that has come up repeatedly in other panels of this Court. In fact, my understanding is even last week during oral arguments and other cases this did come up. It is the government's position that the four enumerated bases under the statute 3742A for jurisdiction for a defendant's appeal of a sentence do not encompass, essentially, challenges to the district court's discretionary application of 3742A. But if you say that, don't you run into terrible trouble with the rationale of Booker at that point? I mean, which is already kind of tense to start out with. And if we're not going to review — essentially, if you're not reviewing an in-guideline sentence, you're not reviewing the other criteria of 3553 and how they were applied, and we're not being serious about the deference to the district court, and at that point doesn't the rationale of Booker just go up in smoke? Not exactly, Your Honor. I mean, I think what the Court is getting at is whether, I suppose, a challenge to the district court's application of 3553A factors would be something that is, quote, in violation of law, which would be under 3742A1. It's the government's position that that wouldn't be something in violation of law. Something in violation of law would be a sentence, obviously, that's exceeded the statutory maximum or violated some other law. Here, though, this is a discretionary application of the evaluation of 3553A factors. By analogy, I think, for example, this Court would have no jurisdiction pre-Booker to consider the district court's decision not to depart. That was a discretionary application of the district court's authority. Also pre-Booker, this Court would have had no jurisdiction. But the opinion in Booker, I mean, somewhat oddly, says that we are to review for reasonableness and creates this tension between the notion that we're going back to the pre-Guidelines period in terms of deference to the trial court, but then saying, well, no, we're reviewing for reasonableness. Well, how can we review for reasonableness and not review a bunch of the factors that are relevant? I do agree with Your Honor's point about the Booker's talking about the reasonableness standard. But it's the government's position that Booker didn't change anything about 3742A. What Booker did is it struck 3742E's de novo standard of review, replaced that de novo standard of review with the reasonableness standard of review. In fact, the Booker Court stated that the remainder of the Sentencing Reform Act, that is 3742A, would be intact and would function independently. So it's the government's position that, in fact, 3742A is the only basis for jurisdiction for courts to review defendants' appeals of their sentences, that there would be no jurisdiction then with respect to these reasonableness challenges. I'd like to square any of this with the back and forth between Justice Breyer's opinion for the remedial majority and Justice Scalia's dissent. Justice Scalia is saying, well, now, it used to be that the federal courts would only have to review 16% of the appeals, and now they're going to have to review 100% of them to see whether they're reasonable. And Justice Breyer's answer to that, after having said that now they look for reasonableness across the board, is to say that, well, the judges are well used to applying standards of reasonableness, and we're sure they're up to the job, et cetera. He didn't say, oh, no, we're not changing the system. It seems to me it's very hard to read that and then say that we're free to say that we don't review all of them for reasonableness. The government would agree, Your Honor, that there are some difficulties with squaring this position with what was stated in Booker. But what was not explicitly before the court in Booker was the jurisdiction of the appellate courts. And while the Booker court touched on the standard of reasonableness, and more so, really, in terms of de novo, the standard being struck and replaced with reasonableness, I don't believe that the Court necessarily reached or had it fully briefed before at the issue as to whether the 3742A jurisdiction was affected. See, what's interesting about this case is that the district court did sentence within the guidelines, but apparently not for guidelines reason. I mean, when he explained why he got where he got, he – well, first of all, he didn't really sentence within the guidelines. He sentenced under the guidelines. And second of all, he gave a set of reasons which really weren't the guidelines. It is a little odd, Your Honor, and I believe if the government were the appellant here, we might have actually a better position because there was no statement as to why the district court sentenced outside of the guidelines. But here we are as the appellee trying to defend the sentence. And essentially, it cannot be that the – you know, under 3742A, that the defendant has – that this Court has jurisdiction over a sentence within the guidelines. And certainly – Well, he had said, for example, okay, I'm going to sentence within the guidelines. And the reason I'm going to sentence within the guidelines is because I happen to know this guy's father, and he's a nice guy, and that's why I'm going to sentence within the guidelines. Now, we couldn't review that? That, Your Honor, I think would be the type of circumstance that would be – that could be found under – in violation of law. I believe in violation of law is broad, and I think in certain – in a case such as that, that that might be the type of sentence. Well, because it was unreasonable, not because it's inconsistent with the guidelines, because the guidelines aren't binding. But I think a district court that cloaked a justification that's in violation of law as one of unreasonableness to sidestep, if you will, this Court's jurisdiction, I think that that is something that the reviewing courts could pierce through. Tom, very interesting. To say the least, Your Honor. Let me just quickly then turn to the Sixth Amendment challenge. I think that the Booker certainly addressed the fact that there is no Sixth Amendment problem now that the guidelines are advisory and not mandatory. One thing I would simply add is that Justice Breyer, in his majority opinion, they explicitly rejected the approach that was advanced in the dissent by Justice Stevens, which is the approach advanced here by the appellant, which is to retain the sentencing guidelines as written, engraft the jury retrial requirement, and then prevent courts from increasing sentences based on anything other than things found by the jury. In fact, the Supreme Court noted that such an approach would destroy the sentencing system. To the extent that Booker and the Supreme Court were not so clear on this, this Court in its en banc opinion in Ameline was very clear that, again, rather than engraft a jury requirement on the sentencing guidelines, instead the Supreme Court struck portions of the Sentencing Reform Act that made the guidelines mandatory. But does that have an implication for how we do reasonableness review in the sense that at some point doesn't reasonableness review become – start setting up a set of mandatory guidelines of its own, i.e., if we start developing sort of court-developed guidelines about what's reasonable and what isn't reasonable? And if we do that, do we then have to look at what the jury found as opposed to what – I mean, are we inevitably going to do that? And doesn't that drive you back to having to look at what the jury found as opposed to what the judge found? Well, Your Honor, in terms of whether I guess a series of opinions by the reviewing courts would set up some sort of new system as to what is reasonable, I do not think that that would be the case. We're in new territory here, but looking at the most recent opinion by this Court, I think in the many-weather opinion, the majority panel of this Court, in fact, was quite clear about the fact that it very much were in the shoes of the district court, would not have imposed the sentence that the district court did. In fact, it stated many reasons why it wasn't exactly a sentence that the appellate court were in the shoes of the district court would have done, but nonetheless deferred to the district court, saying that it couldn't say it was unreasonable. There's a range of reasonableness, just as there was a guidelines. It may be bigger, but it's still a range. I think that's right, Your Honor. And reasonableness is a range. It's a continuum. And so a reviewing court will simply look to see whether it falls in the range of reasonableness and not simply establish rules for what is the one reasonable sentence. I don't think that that was, in fact, the intent of Booker, and I don't think that that's what is going to play out. Finally, I guess, turning to the due process claim, the government would simply submit that the DuPont panel was correct in so deciding. I think even the appellant recognizes that in page 5 of his reply brief. He simply asked that this panel revisit that decision. The government submits that there would be no reason to do so, unless the court has any specific questions that the government would submit. Well, if it's really covered by DuPont, we can't revisit it. We'd have to have an in vain court do that. I would agree, Your Honor. In fact, one of the substantial reasons the DuPont court advanced for retroactive application of both opinions is the fact that the en banc court in Ameline necessarily implied that both of the Booker holdings should be applied retroactively. So that would be yet another reason why this panel ought not to revisit the issue. If there's no other questions, the government would submit. Thank you very much. Thank you very much. Thank you, counsel. As one continues to look at the two opinions, I think we all come back to or it appears that we come back to a mandatory nature of the guidelines that must be considered, and it's the position... They have to be... It's mandatory that they be considered, but they don't have to be considered as mandatory. They're sort of slipping that distinction. They must be considered, but they don't have to be followed. Isn't that what we've been told? They must be considered for purposes of statutory under 3553A4, and because they must be considered, there's a mandatory nature. I mean, how does one get around the issue of the constitutional protections? I, for one, don't understand why if a judge sentences on the basis that he believes X is the case, it's any different whether he does so mandatorily or discretionarily, but that's what we've been told. It makes a difference. And that they're not mandatory in the way that they were. They're mandatory only in an advisory. This is the reason why we're proposing the two-step process, and the first step should be the mandatory evaluation using the constitutional protections. I would just like to finally point out on the ex post facto argument, due process argument, that we've set forth, that the distinction between this case and the DuPas cases, and Mr. Hudson relied upon his sentencing guidelines being mandatory in determining whether he was going to go to trial. And that's the difference, and it's not a straight request for reversal, but it's to take into consideration the reliance in using to go ahead with his jury. But he ended up better off. He ended up better off than if the guidelines were mandatory. He ended up better off, assuming the beneficial portion of the Booker opinion is excluded. Than if he had gone to trial in the period that the guidelines were mandatory, before Blakely. His problem is that he went to trial after Blakely. That's not why it matters. He went to trial after Blakely, pre-Booker. I think the retroactivity we're usually looking at avoiding in ex post facto is, at the time of the criminal act, what were the incentives and balancing work done? Not necessarily at some later point when we're going to trial. The die is already cast. The decision has been made. A crime has been committed. It can't be made subject to a higher penalty after the commission. But I don't know if that's what's happened here. I think that's happened here in the sense that an individual was under a mandatory system, determining whether to go to trial or not was a difference of plus or minus three points in determining the guideline range. After he's convicted, a new case comes out, and now it's, well, he could be up to the statutory maximum. I think that's where the prejudice is. I do process fairness. Fair warning. Okay. Thank you very much. Thank you. Thank you, counsel, for your useful arguments. The case of United States v. Hudson is submitted, and we will go on to United States v. Weber. Thank you.
judges: Canby, Noonan, Berzon